**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 08-cv-01978-WYD-CBS

HOME DESIGN SERVICES, INC.,
      Plaintiff,
v.

CHRIS KENDRICK CONSTRUCTION, and
CHRIS KENDRICK,

      Defendants.

---

**ORDER OF THE UNITED STATES
MAGISTRATE JUDGE ON DEFENDANTS' MOTION
FOR SANCTIONS**

---

Magistrate Judge Craig B. Shaffer

THIS MATTER comes before the court on Defendants Chris Kendrick Construction and

Chris Kendrick's (collectively "Kendrick") Motion for Sanctions (doc. # 45) pursuant to 28

U.S.C. § 1927, dated April 22, 2009.  Plaintiff Home Design Services, Inc. ("HDS") filed its

Response in Opposition to Defendants' Motion for Sanctions Pursuant to 28 U.S.C. § 1927 (doc.

# 50) on May 12, 2009, and  Kendrick filed a Reply (doc. # 51) on June 1, 2009.  With an Order

of Reference dated September 29, 2008, this matter was referred to the magistrate judge to, *inter*

*alia,* "[h]ear and determine any pretrial matter including discovery and non-dispositive

motions."[1]  I have carefully considered the arguments presented in the parties' briefs as well as

---

[1] Pursuant to 28 U.S.C. § 636 (b)(1)(B), a district judge may designate a magistrate judge to conduct hearings and submit proposed finding of fact and recommendations with respect to any dispositive motion.  While Plaintiff's Motion for Sanctions does not purport to seek dispositive relief, the formal label of a motion is not determinative for purposes of § 636(b)(1)(A) and (B).  The Tenth Circuit has held that "[m]otions not designated on their face as one of those excepted in [§ 636(b)(1)(A)] are nevertheless to be treated as such when they have an identical effect."  *First Union Mortgage Corp. V. Smith,* 229 F.3d 992, 995 (10th Cir. 2000), citing *Oecelot Oil*

1

the applicable law.  For the following reasons, the court hereby denies Defendants' Motion.

## FACTUAL BACKGROUND

HDS and Kendrick are strangers in neither the business nor legal realms.  Plaintiff HDS is a nationally recognized designer and retailer of pre-drawn custom home plans.  Defendant Chris Kendrick Construction, which is owned and operated by Defendant Chris Kendrick, is a construction contractor working in the Grand Junction area.  The parties have a history of business relations.  Kendrick has routinely purchased designs from HDS for homes it has constructed in the Grand Junction area.  In February of 2006, believing that Kendrick had improperly appropriated the plans for several homes, HDS filed suit ("Suit 1") for copyright infringement.  The parties reached a settlement and HDS voluntarily dismissed Suit 1 on September 5, 2006.

On March 27, 2008, HDS filed a second action against Kendrick ("Suit 2") believing it had uncovered another instance of copyright infringement.  Over the course of discovery, Plaintiff realized that its Complaint cited the wrong design plan, and HDS notified Kendrick that it would amend its Complaint to reflect the correct set of drawings.  However, when HDS reviewed its own records it discovered that it did not have a copyright registration for the new design.  HDS dismissed Suit 2 on July 8, 2008.

On August 18th of the same year, HDS sent a letter to Defendants claiming that, "through its own continuing investigation," HDS had "uncovered another fourteen (14) potentially infringing homes constructed by" Kendrick.  In that same letter, HDS asked Kendrick to provide "front elevations and floor plans" for each of the suspected homes so that HDS could determine

_Corp. V. Sparrow Industries,_ 847 F.2d 1458, 1462 (10th Cir. 1988).

which design plan to include in an upcoming lawsuit.  On September 15 2008, HDS filed the

instant action ("Suit 3").  HDS initially alleged that Kendrick had improperly appropriated two

sets of drawings; HDS 4517 and HDS 2089/1758.  By December of 2008, Kendrick provided

Plaintiff with either the design plans or certificates of purchase for each of the fourteen addresses

identified in HDS's August 18th letter.  At this point, HDS realized that its original Suit 3

allegations were inaccurate.  Later, during a December 11 telephone conversation with

Defendants, HDS identified eight more design plans that it contemplated adding to the pending

suit.  In its Amended Complaint (doc. # 39), filed February 13, 2009, HDS abandoned its

original claims based upon HDS 4571 and HDS 2089/1758.  In their place, HDS identified only

one design, HDS 2089/2010, that it believed Defendants had infringed upon.  HDS has stated in

its communications with the court that it will stand by its Amended Complaint for the remainder

of the pending lawsuit.

## ANALYSIS

HDS initially challenges Kendrick's motion as violative of the meet and confer

requirement set forth in D.C.Colo.LCiv.R. 7.1A.  This Rule provides:

> The court will not consider *any motion*, other than a motion under Fed. R.
> Civ. P. 12 or 56, unless counsel for the moving party or a pro se party, before
> filing the motion, *has conferred or made reasonable, good-faith efforts to confer*
> with opposing counsel or a pro se party to resolve the disputed matter.  The
> moving party shall state in the motion, or in a certificate attached to the motion,
> the specific efforts to comply with this rule.

D.C.Colo.LCivR 7.1A (emphasis added).

It is undisputed that Kendrick failed to confer, or make any effort to confer, with HDS

prior to filing the instant motion.  Kendrick also failed to include with its motion a certificate of

compliance or describe any efforts taken to comply with Local Rule 7.1(A).  Both of these

3

failures constitute violations of the Rule that would justify denial of the motion. *City of Wichita, Kansas v. Aero Holdings, Inc.,* 2000 WL 33170895, at *2 (D. Kan. 2000). In hindsight, the court should have raised these deficiencies at the time Kendrick filed its motion.

The meet and confer requirement seeks to encourage informal dispute resolution by requiring counsel to "converse, confer, compare views, consult and deliberate" prior to involving the court. *City of Wichita,* 2000 WL 33170895, at *1 (citing *VNA Plus, Inc. v. Apria Healthcare Group, Inc., No. Civ.,* 1999 WL 386949, at *2 (D. Kan. 1999)). However, merely informing an opposing party of an impending motion does not satisfy a party's 7.1A obligations. *Cf. Cotracom Commodity Trading Co. v. Seaboard Corp.,* 189 F.R.D. 456, 459 (D. Kan. 1999). Rather, the meet and confer requirement contemplates that the parties will "make genuine effort[s] to resolve the dispute" before formal action is taken. *Cf. Williams v. Sprint/United Management Co.,* 2006 WL 2734465, at *4 (D. Kan. 2006).

At this point in the proceedings, however, a strict adherence to Rule 7.1 would neither promote judicial efficiency nor lead to the expeditious resolution of this motion. Fed. R. Civ. P 1. The parties have fully briefed the matter and I am convinced that a request for sanctions cannot be resolved without judicial intervention. If the court dismissed the pending motion on procedural grounds, Kendrick would almost certainly re-file the same motion after adding a certificate of compliance. The resulting delay would not materially advance the interests of any party, including the court. While the court will overlook Kendrick's 7.1A violations in this instance, counsel are strongly admonished to fully comply with Local Rule 7.1A in the future.

As to the merits of the Motion for Sanctions (doc. # 50), Kendrick argues that HDS's

4

conduct amounts to misuse of the judicial process and justifies sanctions under 28 U.S.C. § 1927. Specifically, Kendrick alleges that every time HDS accuses them of infringing upon a design plan, Defendants are required to compare that plan against each of the homes they have constructed, locate the original plan for a particular address and produce the purchasing documentation for the plan used.  Kendrick also claims that it has "conferred with an expert regarding the plan(s) and home(s) at issue."  Such efforts cost time and money.  Defendants must repeat this process every time Plaintiff amends its Complaint to drop allegations and add different design plans or addresses to the lawsuit.  Kendrick insists that Plaintiff's behavior results in a reckless multiplication of the proceedings, "which in turn causes Kendrick to incur[] unnecessary expenses, costs and attorney fees."

HDS's Response (doc. # 50) counters first by arguing that a party may only be sanctioned under § 1927 for its actions during the case at bar, which would preclude the court from considering HDS's conduct during Suit 1 or Suit 2.  HDS also argues that the shifting focus of its pleadings is the result of Kendrick's refusal to cooperate with informal requests for information. According to the Plaintiff, Kendrick has repeatedly refused to voluntarily produce construction documentation pertaining to suspected infringements, leaving HDS no alternative but to commence litigation and pursue formal discovery.  HDS contends that its actions do not constitute "vexatious and unreasonable" conduct under § 1927.

Section 1927 provides in pertinent part:

> Any attorney . . . who so *multiplies the proceedings in any case unreasonably and vexatiously* may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added).

Defendants claim that Plaintiff's history of litigation against Kendrick, when viewed in the aggregate, reflects "a pattern of conduct" that "unreasonably and vexatiously multiplied the proceedings at the expense of Defendants." As a threshold matter, the court must first decide whether the two preceding law suits should be considered in deciding the motion filed in this case.

By its very terms, § 1927 authorizes sanctions when a party multiplies "the proceedings in any case." 28 U.S.C. § 1927. Thus, courts are to apply § 1927 "to misconduct by an attorney in the course of proceedings in a case before the court, not misconduct that occurs before the case appears on the federal court's docket." *Bender v. Freed* 436 F.3d 747, 751 (7th Cir. 2006) (original quotes omitted). *See also In re Schaefer Salt Recovery, Inc.,* 542 F.3d 90, 101 (3rd Cir. 2008) ("[Section] 1927 explicitly covers only the multiplication of proceedings that prolong the litigation of a case and likely not the initial pleadings, as the proceeding in a case cannot by multiplied until there *is* a case.")

Kendrick has not provided any case law that would support its contention that the conduct in three successive lawsuits should be combined for the purposes of this motion. However, Kendrick has cited *Chambers v. NASCO, Inc.* to suggest that a party can be sanctioned based upon conduct that occurred prior to the filing of a lawsuit. *Chambers v. NASCO, Inc,.* 501 U.S. 32, 57 (1991). In that case, the defendant engaged in a number of bad faith actions designed to frustrate and undermine the plaintiff's case. Such actions included an "attempt[] to deprive [the] Court of jurisdiction by acts of fraud," the filing of "false and misleading pleadings," and "other tactics of delay, oppression, harassment" designed to "reduce the plaintiff to exhausted compliance." *Id.* at 41.

6

Although the trial court in *Chambers* awarded fees and costs under its inherent powers, the court denied the plaintiff's § 1927 motion for sanctions because it found that the statute was "not broad enough" to incorporate the wide range of the petitioner's conduct. *Id* at 41-42. According to the Supreme Court, § 1927 is to be construed very narrowly, and conduct of the sort encountered in *Chambers* is best dealt with under the broad authority of the trial court's inherent powers. *Id.* I find that *Chambers* is both factually and legally distinguishable from the instant case. For the foregoing reasons, the operative conduct for the purposes of Defendants' § 1927 motion is limited to the case at bar, and thus the court will not look beyond the instant case in determining whether HDS's conduct justifies sanctions.

The Tenth Circuit has defined unreasonable or vexatious conduct as "either intentional or reckless disregard of the attorney's duties to the court." *Braley v. Campbell* 832 F.2d 1504, 1512 (10th Cir. 1987). *See also Shackelford v. Courtesy Ford, Inc.* 96 F. Supp. 2d 1140, 1144 (D. Colo. 2000); *In re Endrex Investments, Inc.* 111 B.R. 939, 947 (D. Colo. 1990). More specifically, for sanctions to be justified under § 1927 an "attorney's conduct must rise to the level of a serious and studied disregard for the orderly processes of justice." *Shackelford* 96 F. Supp. 2d at 1144 (citing *Dreiling v. Peugeot Motors of America, Inc.,* 768 F.2d 1159, 1165 (10th Cir. 1985). While actions taken in bad faith certainly satisfy the identified standard, bad faith itself is not a discrete requirement under § 1927. *Hamilton v. Boise Cascade Exp.* 519 F.3d 1197, 1202 (10th Cir. 2008)*. See also Braley* 832 F.2d at 1512 (10th Cir. 1987) (correcting a party's contention that sanctions under § 1927 are imposable only for subjective bad faith)*; McCandless v. Great Atlantic and Pacific Tea Co.,* 697 F.2d 198, 200 (7th Cir. 1983) (holding that an attorney who acts with "an empty head and a pure heart" is still responsible for the

7

consequences of their actions).  However, as the trial court noted in *Shackelford*, "[r]eckless conduct differs significantly from mere negligence."  *Id.*  Conduct that can be attributed to "inadvertence, incompetence, or unskillfulness" would therefore not warrant sanctions under § 1927.  *Id.* (citing *United States v. Wallace,* 964 F.2d 1214, 1220 (D.C. Cir. 1992)).

A brief recitation of the facts in *Shakelford* will serve to further illustrate the appropriate standard for imposing sanctions under § 1927.  In that case, Courtesy Ford hired the plaintiff as a sales representative.  *Id.* at 1141.  Several of the documents she signed at the time indicated that her employment was at-will.  *Id.*  After she was terminated, the plaintiff filed suit claiming wrongful discharge in violation of public policy and intentional infliction of emotional distress. *Id.* at 1142-43.  Over the course of the pre-trial and discovery processes, it became evident that the plaintiff's wrongful discharge claim was entirely baseless and the claim for intentional infliction of emotion distress was, at best, tenuous.  *Id.* at 1146-47.

Following the dismissal of the plaintiff's case on summary judgment, the defendant filed a § 1927 motion for sanctions.  *Id.*  The court determined that "although a case may not be frivolous when filed, the continued prosecution of an action after it has become apparent that it is meritless" constitutes a disregard for the orderly process of justice and "will warrant sanctions under § 1927." *Id.* at 1144-45.  Sanctions were therefore awarded for the wrongful termination claim because the court found the claim to have been frivolous from its inception.  *Id.* at 1148. However, the court did not sanction the plaintiff for the intentional infliction of emotion distress claim.  *Id.*  Though the latter claim was ultimately dismissed, the court found that plaintiff's counsel genuinely believed the claim had merit, and "[s]he should not be sanctioned simply because she was wrong." *Id.*

8

Kendrick argues that § 1927 sanctions should be imposed because HDS brought an initial compliant that was "not warranted by existing law" and lacked "evidentiary support."[2]  This argument fails, however, because the Tenth Circuit has held that the mere filing of a complaint does not trigger § 1927 sanctions.  *Steinert v. Winn Group, Inc.* 440 F.3d 1214, 1224-25 (10th Cir. 2006) (construing the "unambiguous statutory language" in § 1927 to "necessarily exclude[e] the complaint that gives birth to the proceedings, as it is not possible to multiply proceedings until after those proceedings have begun.")  Further, a plaintiff can not be sanctioned for proceeding with litigation without evidentiary support when the information necessary to prove their claim(s) is in the exclusive control of an uncooperative defendant.  *Cf. Greenberg v. Chrust,* 297 F. Supp. 2d 699, 704 (S.D.N.Y 2004).  Because Defendants refused to informally produce the requested documentation, the court will not sanction HDS for filing suit and proceeding with the formal discovery process.

Alternatively, Defendants claim that HDS multiplied the proceedings of the instant action when "in between the original and amended complaints in this case, HDS put eight other plans at issue."  However, this is a misstatement of the factual record.  While Plaintiff may have alluded to other plans in communications with defense counsel, those plans were never alleged in an operative pleading.  *Cf. Ziemba v. Thomas,* 390 F. Supp. 2d 136, 147 (D. Conn. 2005) (holding that any violations not alleged in plaintiff's Third Amended Complaint were "not at issue in the case").  Since the eight additional design plans discussed on December 11th were not included in the Amended Complaint they have never been "at issue" in this case and therefore have not

---

[2] In its Motion for sanctions, Defendants claims that "HDS's counsel . . . acted in a reckless and indifferent manner by bringing and maintaining claims against [Kendrick] which were not well grounded in fact."  Without expressing an opinion as to the merits of this allegation, the court notes that Kendrick chose not to challenge the factual sufficiency of HDS's initial Complaint under Fed. R. Civ. P. 11.

multiplied the scope of the proceedings.

Finally, Kendrick argues that HDS acted unreasonably and vexatiously by filing an amended complaint that materially changed the claims involved in the suit.  However, the court will decline to impose § 1927 sanctions in the absence of evidence suggesting that the amendment was solely intended to delay the progression of the case.  *Newborn v. Yahoo! Inc*., 437 F. Supp. 2d 1, 10 (D.D.C. 2006) (citing *Wallace,* 964 F. 2d. at 1220).  Since HDS filed its Amended Complaint in order to clarify and simplify the instant action, the amendment does not justify sanctions.

I do not find that HDS violated its duty to the court by intentionally pursuing a frivolous action.  Like the plaintiff in *Shakelford,* HDS filed a claim it initially believed was valid.  However, as in *Shakelford,* the discovery process ultimately proved the claim to be baseless.  At the point that HDS learned its initial claim was misguided, HDS amended the Complaint to correct its position in a timely manner.  *See* Scheduling Order (doc. # 29), dated February 2, 2009.  Far from unnecessarily expanding the case, this amendment narrowed the scope of the instant action to include only those claims that the Plaintiff believes are supported by evidence.  While I am not insensitive to the time and expense incurred by Kendrick in addressing claims that were subsequently dropped from the litigation, I am not convinced that Plaintiff's counsel's conduct rises to the level of "serious and studied" disregard for the judicial process as required for the imposition of sanctions under § 1927.

Accordingly, for the foregoing reasons, Defendants' Motion for Sanctions under § 1927 (doc. # 45) is DENIED.

DATED at Denver, Colorado, this 7th day of July, 2009.

BY THE COURT:


_s/Craig B. Shaffer_
Craig B. Shaffer
United States Magistrate Judge

11